

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WAGGONER CARR
ATTORNEY GENERAL

October 14, 1963

Honorable William Hunter McLean        Opinion No. C-159
Chairman, State Board of Insurance
1100 San Jacinto                       Re: Construction of House
Austin 14, Texas                           Bill 938, Acts 58th
                                           Leg. R.S. 1963, ch.
                                           405, p. 981; (amending
                                           Article 3.53 of the
Dear Sir:                                  Texas Insurance Code)

By letter of August 15, 1963, the State Board of Insurance requested that this office answer several questions concerning the proper construction of the subject act commonly known as "The Model Act for the Regulation of Credit Life Insurance and Credit Health and Accident Insurance."

Your initial question inquires whether or not the "monthly outstanding balance" method of premium payments by creditors or lenders is in violation of Section 8-D of Article 3.53, as amended by House Bill 938, if the creditor or lender has previously charged the debtor the entire single premium or identifiable insurance charge in advance for the full term and amount of the indebtedness.

There are two principal methods by which the premium or charge collected from the debtor is remitted to the insurance company, and your opinion request describes them essentially as follows:

(1) The single premium or advance premium method under which the creditor, after collecting from the debtor an amount sufficient to cover the insurance for the full amount and term of the debt (or adding such amount to the indebtedness of the debtor) promptly remits such full single premium to the insurance company to insure the debtor for the amount of the debt for the entire term of up to five years.

(2) The "monthly outstanding balance" method under which the creditor does not remit the full single premium to the insurance company but instead remits to the insurance company a monthly premium in payment of coverage for the total monthly outstanding unpaid balances on all indebtednesses of the creditor, as per the group master policy between the creditor and the insurance company.

Section 8-D of Article 3.53 reads as follows:

"D. The amount charged to a debtor by the creditor for any credit life or credit accident and health insurance issued to the debtor shall not exceed the actual premium charged the creditor by the insurer for such insurance, as computed at the time the charge to the debtor is determined."

We are of the opinion that the "monthly outstanding balance" method of premium payment is not in violation of Section 8-D of Article 3.53 of the Insurance Code of Texas.

A reading of Section 8-D indicates clearly that it is concerned with and seeks to regulate only the amount charged to a debtor by the creditor for credit life or credit accident and health insurance. It is not concerned with the method of premium payments. The Legislature sought to insure that the debtor would not pay to the creditor an amount in excess of the actual premium charged the creditor by the insurer for such insurance. The maximum limitation on the amount charged to a debtor by the creditor is the actual premium charged the creditor by the insurer, and such premium is to be computed at the time the charge to the debtor is determined. Had the Legislature intended to prohibit the monthly outstanding balance method of payment, it could easily have done so by requiring prompt remittance by creditors to the insurers of amounts charged debtors for insurance coverage.

Our opinion is strengthened by the fact that House Bill 938, as originally introduced, contained the following sentence as the last paragraph of Section 8-D.

"If a creditor collects a single identifiable insurance charge in advance from the debtor or includes said amount in the total amount of the indebtedness upon which an interest or finance charge is made to the debtor for the entire term of the indebtedness, said creditor shall promptly pay said amount as a single premium to the insurance company."

The inclusion of this language in Section 8-D would effectively have abolished the monthly outstanding balance method of payment in those instances where a creditor had collected the single advance premium from the borrower at the time the indebtedness was incurred. The fact that the Legislature originally considered such language and specifically omitted it from the Act is, in our opinion, equivalent to legislative

authorization of the monthly outstanding balance method of payments. Had this language remained in the Act, it would have permitted the utilization of only the "advance premium" method of payment. That more than one method of payment was recognized by the Legislature is evidenced by the following underscored language of Section 2-A(2) of the Act:

> "(2) All life insurance and all accident and health insurance sold in connection with loans or other credit transactions of less than five (5) years duration, the premium for which is charged to or paid for in whole or in part either directly or indirectly by the debtor, shall be subject to the provisions of this Act, regardless of the nature, type or plan of the credit insurance coverage or premium payment system except where the issuance of such insurance is an isolated transaction on the part of the insurer not re- lated to an agreement or plan for insuring debtors of the creditor."

In view of the foregoing, we are of the opinion that the monthly outstanding balance method described above does not violate Section 8-D of Article 3.53 of the Texas Insurance Code. The remaining questions are based upon the assumption that the monthly outstanding balance method does not violate Section 8-D and we now turn to them:

Your second question inquires whether the insurance company should calculate its reserves upon the basis of the monthly premium collected by it from the creditor or upon the basis of the entire single charge to the debtor. In our opinion, irrespective of the method of premium payment, the insurer is required to maintain appropriate reserves consistent with the risk to which it is exposed by its policies.

Your third question inquires whether premium taxes are owed to the State of Texas on the full single charge to the debtor by the creditor or upon the monthly premiums collected by the company from the creditor. In our opinion, premium taxes are owed only on the premiums actually collected by the insurance company whether it be a foreign company paying taxes under Article 4769, or a domestic company paying taxes under Article 7064a. Both of these Articles require that the companies report the gross amount of premiums "collected" during the taxable year and require that the companies "shall pay an annual tax computed on. . .the gross amount of premiums collected during such year. . . ."

Your fourth question reads as follows:

"(4) In the event of termination of the indebtedness by refinancing or otherwise, is the insurance company responsible for refunding the unearned portion of the full single premium charged to the debtor or just the unearned portion of the monthly premium paid to the insurance company?"

We are of the opinion that the insurance company is responsible for refunding the unearned portion of the monthly premium paid by the creditor to it.

Your fifth question is as follows:

"(5) In the event of the death of the debtor prior to repayment of the indebtedness, which results in the payment by the insurance company to the creditor of the full amount of the indebtedness, including an amount equal to the full single premium charge to the debtor in advance, there is an amount of money paid by the insurance company to the creditor which represents an unused premium for the insurance which was never paid to the insurance company and which under the monthly outstanding balance method was never due to the insurance company. Does this amount of money paid by the insurance company to the creditor belong to the estate of the deceased, the creditor or the insurance company?"

We are of the opinion that such amount of money belongs to the estate of the deceased and that appropriate rules and regulations may be adopted to insure the proper refund of such amount by the creditor under the provisions of Section 8-D of Article 3.53, quoted as follows:

"B. Each individual policy, or group policy and group certificate shall provide that in the event of termination of the indebtedness or the insurance prior to the scheduled maturity date of the indebtedness, any refund of an amount paid by or charged to the debtor for insurance shall be paid or credited promptly to the person entitled thereto; provided, however, no refund need be made if the amount thereof is less than One Dollar ($1). The formula to be used in computing such refund shall be filed with and approved by the Commissioner."

Because your request does not submit specific information with respect to the terms and provisions of the certificate and policy that might be involved, we are unable to give a definite answer to your sixth question. However, the question as framed suggests the possibility that the debtor might be furnished a certificate which would indicate the existence of coverage for the full term of the loan, while there might be provisions in the policy which would restrict the liability of the insurance company to a period of one month with a right to monthly renewals subject to the payment of premiums by the creditor. Assuming that the creditor had previously charged the debtor the entire single premium or identifiable insurance charge in advance for the full term and amount of the indebtedness and further assuming that the certificate furnished to the debtor is phrased in language which would indicate to the ordinary debtor that he had coverage for the full term of the indebtedness, it is our opinion that any provision in the policy which would limit the coverage to a period of one month or such other period of time as would be less than the full term of the indebtedness would be contrary to good morals and would, therefore, violate the public policy of the State of Texas.

We answer your seventh question that the charging of interest or other finance charge on the amount of the single premium, where monthly outstanding indebtedness insurance is provided, would not necessarily violate House Bill 938. In the absence of a specific fact situation, we can give no more definite answer at this time. Many transactions of this nature come within the purview of the Regulatory Loan Act of 1963 and would be subject to regulation by the Regulatory Loan Commissioner of the State of Texas.

## SUMMARY

1. The monthly outstanding balance method of premium payment on credit life insurance is not prohibited by Section 8-D of Article 3.53 of the Texas Insurance Code.

2. The insurance company should maintain its reserves so that they will be consistent with the risk to which it is exposed.

3. Taxes are owed to the State of Texas only on the premiums actually collected by the insurance company.

4.   The insurance company is responsible for refunding the unearned portion of the monthly premium paid it by the creditor.

5.   The amount of unused premium payments in the event of a death which terminates a policy belongs to the estate of the deceased debtor and should be remitted to his estate by the creditor.

6.   If the debtor is furnished a certificate of insurance which would indicate to the ordinary debtor that his debt is protected for the entire period contemplated by his loan, any policy provision which would restrict the coverage to a lesser term would violate the public policy of the State of Texas.

7.  The charging of interest or other finance charge to the debtor on the amount of the single premium not actually remitted to the insurance company does not necessarily violate House Bill 938.  Many transactions of this type come under the jurisdiction of the Regulatory Loan Commissioner of the State of Texas and are subject to his regulations.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By: Scott Garrison

Scott Garrison
Assistant Attorney General

SG:br

APPROVED:

OPINION COMMITTEE

W. V. Geppert, Chairman
Albert Jones
Grady Chandler
J. C. Davis
John Reeves

APPROVED FOR THE ATTORNEY GENERAL
By: Stanton Stone